# EXHIBIT A

Electronically Filed by Superior Court of California, County of Orange, 01/29/2024 11:01:43 PM.
30-2024-01376049-CU-CO-CJC - ROA # 4 - DAVID H. YAMASAKI, Clerk of the Court By G. Galon, Deputy Clerk.

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | *FOR COURT USE ONLY*<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

BMW FINANCIAL SERVICES NA, LLC, a Delaware Limited Liability Company; SHELLY AUTOMOTIVE, LLC, a Delaware Limited Liability Company; and DOES 1 through 30, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

TIGRAN PETROSYAN, an individual

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero o bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*  Central Justice Center

700 Civic Center Drive West, Santa Ana, CA 92701

30-2024-01376049-CU-CO-CJC

~~Assigned for All Purposes~~

Judge Sandy Leal

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Hovanes Margarian SBN 246359; Armen Margarian SBN 3137; Shushanik Margarian SBN 318617; The Margarian Law Firm, 462 West Colorado Street, Glendale, CA 91204; Tel: (818) 553-1000

| DATE:<br>*(Fecha)*  01/29/2024 | David H. Yamasaki, Clerk of the Court | Clerk, by<br>*(Secretario)*  G. Carlvo G.Galon | , Deputy<br>*(Adjunto)* |
|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.

2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* BMW FINANCIAL SERVICES NA, LLC, a Delaware Limited Liability Company

under: ☐ CCP 416.10 (corporation)         ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
☒ other *(specify):* Corp. Code 17701.16, Limited Liability Company

4. ☒ by personal delivery on *(date):* 2/23/24

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |
|---|---|---|

Hovanes Margarian SBN 246359
hovanesm@margarianlaw.com
Armen Margarian, SBN 313775
armenm@margarianlaw.com
Shushanik Margarian, SBN 318617
shushanik@margarianlaw.com
THE MARGARIAN LAW FIRM
462 West Colorado Street
Glendale, California 91204
Telephone Number: (818) 553-1000
Facsimile Number: (818) 553-1005

Attorneys for Plaintiff
TIGRAN PETROSYAN

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## THE COUNTY OF ORANGE

| | |
|---|---|
| TIGRAN PETROSYAN, an individual,<br><br>        Plaintiff,<br><br>vs.<br><br>BMW FINANCIAL SERVICES NA, LLC, a Delaware Limited Liability Company; SHELLY AUTOMOTIVE, LLC, a Delaware Limited Liability Company; and DOES 1 through 30, inclusive,<br><br>        Defendants. | Case No.:  30-2024-01376049-CU-CO-CJC<br><br>**PLAINTIFF'S COMPLAINT FOR DAMAGES**<br><br>Assigned for All Purposes<br>Judge Sandy Leal |

///

///

///

///

///

///

///

///

///

///

///

---

PLAINTIFF'S COMPLAINT FOR DAMAGES

**NATURE OF THE ACTION**

NOW COMES Plaintiff TIGRAN PETROSYAN, an individual ("Plaintiff"), by and through his attorneys of record, The Margarian Law Firm, with Plaintiff's Complaint for Damages against Defendants BMW FINANCIAL SERVICES NA, LLC, a Delaware Limited Liability Company; SHELLY AUTOMOTIVE, LLC, a Delaware Limited Liability Company; and DOES 1 through 30, inclusive ("Defendants").

Plaintiff is informed and believes, and based thereon alleges, that during the lease of the new 2019 BMW M850i xDrive Coupe bearing the Vehicle Identification Number WBABC4C59KBU96726 ("Subject Vehicle") Defendants defrauded Plaintiff by inducing him to enter into the Motor Vehicle Lease Agreement (Closed End) – California ("Lease")), allegedly including the term regarding the event of a total loss that entitles Defendants to collect sums which do not belong to them. Defendants, verbally and in writing in the Lease, assured Plaintiff that the financial obligation under the Lease would be at the set sums not to exceed the down payment, monthly payments, and the lease end fee. This gave Plaintiff a fixed exposure and the flexibility to purchase the Subject Vehicle at any point in time for the remaining balance on the lease account. This also gave Plaintiff the assurance that he would keep any value above that balance as equity. Nevertheless, when the Subject Vehicle was involved in a collision and deemed a total loss, Defendants claimed that they had to collect the insurance proceeds fully including the portion which exceeded Plaintiff's obligation under the Lease. Furthermore, Plaintiff made payments after the total loss to maintain clean credit history while Defendants refuse to return these payments to Plaintiff to this date.

**PARTIES**

1.    Plaintiff is and was at all times relevant herein an individual residing in Los Angeles County, State of California and leased the Subject Vehicle in the State of California.

2.    Defendant BMW FINANCIAL SERVICES NA, LLC ("BMW Financial Services") is and was at all times relevant herein a Delaware Limited Liability Company. BMW Financial Services was at all times relevant herein a financial service provider authorized to do business as in the State of California and was engaged in the financing and leasing of motor vehicles pursuant to the laws of California.

3.    Defendant SHELLY AUTOMOTIVE, LLC, a Delaware Limited Liability Company, is and

1    was at all times relevant herein located and doing business as Irvin BMW/Irvine MINI at 9881 Research

2    Drive, Irvine, CA 92618 ("Dealership"). Dealership was at all times relevant herein a dealership

3    authorized to do business in the State of California and is engaged in the sale, and distribution of motor

4    vehicles pursuant to the laws of the state of California.

5         4.    BMW Financial Services, Dealership, and DOES 1 through 30, inclusive, are collectively

6    hereby referred to as Defendants.

7         5.    The true names and capacities, whether individual, corporate, associate or otherwise of

8    defendants DOES 1 through 30, inclusive, are unknown to Plaintiff, who therefore sue said defendants

9    by such fictitious names. Plaintiff is informed and believes and based thereon alleges that each of the

10   defendants designated herein as a DOE is legally responsible in some manner for the events and

11   happenings herein referred to, and legally caused injury and damages proximately thereby to Plaintiff as

12   herein alleged.

13        6.    Plaintiff is informed and believes and based thereon alleges that at all times herein mentioned,

14   Defendants, and each of them, were the agents, servants, employees, and/or joint venturers of their co-

15   defendants and, as such, were acting within the course, scope, and authority of said agency, employment,

16   and/or venture. Plaintiff further alleges that each act alleged herein, whether by named defendant or

17   fictitiously named defendants, were expressly authorized or ratified, as the terms are used in Cal. Civ.

18   Code § 3294(b), by each and every other defendant herein, whether named or fictitiously named.

19        7.    Plaintiff is informed and believes and based thereon alleges that at all times relevant herein,

20   defendants, and each of them, were the agents, servants, employees, partners, and/or joint venturers of

21   their co-defendant and were, as such, acting within the course, scope, and authority of said agency,

22   employment, partnership, and/or venture. On information and belief, Plaintiff alleges that the act of any

23   defendant, including those fictitiously named, is imputable to each and every other defendant because

24   one or more of the following relationships existed among Defendants: principal-agent, employer-

25   employee, partner, parent company, sub-company, or such other relationship which would make any

26   liability vicarious and imputable to such defendant in this type of relationship. Plaintiff further contends

27   that each act alleged herein, whether by named defendant or fictitiously named defendants, was expressly

28   authorized or ratified, as these terms are used in § 3294(b), by each and every other defendant herein,

PLAINTIFF'S COMPLAINT FOR DAMAGES

whether named or fictitiously named.

8. To the extent that any defendant was an independent contractor, Plaintiff alleges that the other defendants exercised such dominion and control over the manner, method, and means of the work contracted for that the negligence of any independent contractor should in law, be attributed to the principal who hired such contractor. *See, Washington v. Franciscan Health Sys.*, No. C17-5690 BHS, at *13 (W.D. Wash. July 24, 2018) ["[T]he parties are separately liable for the negligence or misconduct of their agents or employees."] *Otis Elevator Company v. First National Bank of San Francisco*, 163 Cal. 31, 39 (Cal. 1912) ["It is the general doctrine of the law, as it is our statutory rule, that a principal is liable to third parties not only for the negligence of its agent in the transaction of the business of the agency, but likewise for the frauds, torts or other wrongful acts committed by such agent in and as part of the transaction of such business."]

9. Plaintiff is informed and believes and based thereon alleges that, at all times relevant herein, the agents, servants, employees, partners, and/or joint venturers of Defendants were acting within the course and scope of said employment and with the consent of, and under the close direction and control of the officers, directors, partners, or managing agents of Defendants, and that said officers, directors, partners, or managing agents personally authorized, approved of, adopted, and/or ratified the acts alleged herein.

10. Plaintiff is informed and believes and based thereon alleges that, at all times relevant herein, the officers, directors, partners, or managing agents of Defendants, whose names are not currently all known to Plaintiff, personally participated in the acts alleged herein.

11. Plaintiff is informed and believes and based thereon alleges that, at all times relevant herein, the officers, directors, partners, or managing agents of Defendants personally acted with oppression, fraud, or malice in their dealings with Plaintiff regarding the subject alleged in this Complaint.

12. Plaintiff is informed and believes and based thereon alleges that, at all times herein relevant, the officers, directors, partners, or managing agents of Defendants personally had close supervision of their agents, servants, employees, partners, and/or joint venturers and were familiar with the facts regarding the occurrence with Plaintiff alleged herein.

13. Plaintiff is informed and believes and based thereon alleges that after learning of the acts of

the agents, servants, employees, partners, and/or joint venturers of Defendants, the officers, directors, partners, or managing agents of Defendants personally failed and refused to repudiate said actions and failed to redress the harm done to Plaintiff, and failed and refused to punish or discharge the said agents, servants, employees, partners, and/or joint venturers of Defendants.

**STATEMENT OF RELEVANT FACTS**

14.    On or about 01/30/2020, Plaintiff engaged with Dealership with the intent to acquire a vehicle for personal use.

15.    Dealership's personnel, including, but not limited to, Salesperson (name unknown this time) ("Salesperson") and Finance Manager (name unknown this time) ("Finance Manager") presented the Subject Vehicle to Plaintiff.

16.    Plaintiff inquired regarding the purchase and lease options informing Salesperson and Finance Manager that he wanted to lease a vehicle to keep the monthly payments low, but also preferred the option to eventually own the vehicle.

17.    Salesperson and Finance Manager informed Plaintiff about an option to lease the Subject Vehicle at a low cost, with a possibility to purchase it later. By making lease payments, Plaintiff would reduce the principal balance on the Subject Vehicle and eventually buy it for a reduced price based on the number of payments made.

18.    Salesperson and Finance Manager assured that Plaintiff would thus build equity in the Subject Vehicle that would belong to him.

19.    Based on this information, Plaintiff decided to lease the Subject Vehicle and requested to proceed with the lease.

20.    The agreed upon value of the Subject Vehicle was $88,060.00. Finance Manager explained and showed to Plaintiff on the Lease how the price was used to compute the lease payments and how the lease payments would reduce the principal balance over time. The balance would go down to the residual value at the end of the lease. It was further explained that Plaintiff would be able to purchase the Subject Vehicle before the lease ended or at the lease end for the residual value.

21.    Plaintiff asked if he could walk away from the Lease if the Subject Vehicle was worth less than the residual balance or buy it if it was worth more. Finance Manager confirmed this, stating that Plaintiff

could benefit from any equity accrued during the lease term. This convinced Plaintiff to choose the lease over a purchase and signed the Lease.

22.    The terms of the Lease were devised and drafted by BMW Financial Services, by and through its executives and agents some time prior to 01/30/2020. They were presented to Plaintiff by Dealership's personnel who, along with other authorized dealerships, were distributed this adhesive contract.

23.    Plaintiff reasonably relied on the misrepresentations made by the personnel at Dealership. As a result of the misrepresentations, Plaintiff leased the Subject Vehicle instead of purchasing it. Had Plaintiff known that the statements about the equity rights were false, he would have never agreed to lease the Subject Vehicle. Plaintiff would have negotiated other terms and purchased the Subject Vehicle instead of leasing it.

24.    As a result of the misrepresentations made to Plaintiff, he suffered financial damage. If he knew the statements were false sooner, he would have refinanced the Subject Vehicle as a purchase.

25.    On 07/07/2020, the Subject Vehicle was involved in a collision and deemed a total loss ("Total Loss"). Right after the incident Plaintiff filed a claim with his insurance company, State Farm Mutual Automobile Insurance Company ("State Farm").

26.    Shortly after the Total Loss, Plaintiff remitted a payment to BMW Financial Services in the amount of the payoff as declared by BMW Financial Services. BMW Financial Services cashed the check however later refunded the same sum to Plaintiff, refusing to release the title to the vehicle.

27.    State Farm determined that the insurance payout was to be $102,681.05 and issued the respective payment on or about 01/12/2022.

28.    Subsequently, BMW Financial Services collected the full sum of $102,681.05 and refused to remit any amounts to Plaintiff.

29.    The Adjusted Lease Balance was $83,837.95 according to Plaintiff's current calculations and therefore the equity amount was $18,493.10 (Disposition Fee plus the Adjusted Lease Balance minus the Realized Value of the Subject Vehicle) which BMW Financial Services collected, belonged to Plaintiff.

30.    Plaintiff believes that BMW Financial Services acted under the theory that it was entitled to the full sum of the insurance proceeds based on its interpretation of the Lease that it is a "loss payee" pursuant to section 20 of the Lease.

31. However, section 20 of the Lease states that BMW Financial Services will be named "as an additional insured and loss payee." Thus, the coverage would name both Plaintiff and BMW Financial Services as insured and loss payee at the time of the total loss.

32. Whereas BMW Financial Services unilaterally decided to ignore the above stated material distinction and declared itself as a sole loss payee at the time of collecting the full sum of the insurance proceeds, including the equity amount of $18,493.10.

33. Furthermore, the following analysis of the pertinent sections of the Lease clearly shows otherwise.

34. Plaintiff further believes that BMW Financial Services interpreted the Lease terms as that the Lease termination under section 24 also implied that the Purchase Option was no longer in effect and hence BMW Financial Services was the owner of the leased Subject Vehicle. Section 24 of the Lease does not contain any language related to the option to purchase the Subject Vehicle after a total loss claim.

35. Upon a review of the entire Lease, it is clear that Section 27, entitled "Purchase Option," governs the aforementioned topic. Pursuant to the Lease, Plaintiff has an unequivocal right to purchase the Subject Vehicle "AS-IS, WHERE-IS," i.e. at the time of the total loss claim. This right is stated within the Lease. There is no language indicating that this option terminates if the Subject Vehicle is declared a total loss. Therefore, even if BMW Financial Services was affirmed that the option to purchase does not exist after a total loss claim such an affirmation is unsupported and false.

36. Therefore, at the time of the Total Loss, Plaintiff had the right to acquire the Subject Vehicle for the Adjusted Lease Balance ($83,837.95). He could do so concurrently with his insurance company remitting the total loss payment of $102,681.05, leaving Plaintiff with the equity gain. BMW Financial Services refused and deprived Plaintiff of his unequivocal right to do so. The statement that Plaintiff would have been obligated to "re-register and re-title the Vehicle at [his] own expense in [his] own name" relieved BMW Financial Services of that liability but did not restrict Plaintiff from his legal options to sell the Subject Vehicle concurrently and avoid paying those sums. Furthermore, the Lease states that Defendants' sole remedy in the event Plaintiff failed to re-register the Subject Vehicle (which would be the case if he sold it) would be to cancel the registration. That would be inconsequential. BMW Financial Services refused to allow Plaintiff to do so. Instead, BMW Financial Services collected and withheld the

excess sums recovered from the insurance company.

37.    Further, according to section 30 of the Lease Plaintiff has the right to terminate the Lease early by purchasing the Subject Vehicle provided that he has complied with all of the terms of the Lease and met all of the early termination obligations. If Plaintiff does not choose to purchase the Subject Vehicle, he may pay the sum of: (1) $0 since he had no past due Monthly Payments; plus (2) $0 due to lack of any official fees and taxes assessed or billed in connection with this Lease and the Subject Vehicle and any other amounts needed to satisfy [Plaintiff's] obligations under this Lease; plus (3) a $350 Disposition Fee; plus (4) the amount by which the Adjusted Lease Balance exceeds the Realized Value of the Vehicle.

38.    The Adjusted Lease Balance at the time of the Total Loss was $83,837.95 computed pursuant to the constant yield method as displayed in the attachment below marked as Exhibit A.

39.    The Realized Value of the Subject Vehicle was in fact to be the amount of the insurance proceeds pursuant to section 31 of the Lease which states that if the Subject Vehicle is declared Total Loss and Plaintiff has met his insurance obligations, the Realized Value is the amount received from the insurance claim settlement, minus any deductible.

40.    Accordingly, the Realized Value for the Subject Vehicle was $102,681.05. Therefore, Plaintiff needed to pay BMW Financial Services a sum equal to $350 plus $83,837.95 minus $102,681.05, totaling -$18,493.10.

41.    The above assessment is based on Plaintiff's right to terminate the Lease as outlined in Section 30 of the Lease, which specifically addresses the possibility of termination in the event of a total loss.

42.    The language in the respective paragraph of the Lease clearly indicates that it pertains to a scenario where the value of the Subject Vehicle is lower than the outstanding Adjusted Lease Balance. It states that Plaintiff would be responsible for paying the difference. If the language had intended to address a positive sum or credit after paying off the Adjusted Lease Balance, it would have explicitly mentioned it.

43.    In Section 25 of the Lease, it is indicated that the Lease includes gap coverage, which is a standard provision in consumer vehicle leases, provided that the total loss claim is paid by an insurance carrier. It simply states that Plaintiff is not obligated to pay the gap amount. This implies that the gap is expected to be a positive number, meaning that the Adjusted Lease Balance would be higher than the

actual cash value of the Subject Vehicle. It does not address what would happen if the gap amount is negative, indicating that there is equity in the Subject Vehicle.

44.   In general, the Lease does not discuss or contemplate a scenario where there is a positive credit after paying off the Adjusted Lease Balance.

45.   Furthermore, pursuant to Section 23 of the Lease, if Plaintiff had been in default and/or uninsured, BMW Financial Services would have been able to recover a sum of -$18,493.10 as that is the amount by which the Adjusted Lease Balance exceeds the Realized Value.

46.   The Lease does not have any language wherein it states that if the consumer's obligation derived by subtracting the Realized Value from the Adjusted Lease Balance is a negative sum, then BMW Financial Services shall take that amount. This lack of specific reference to this scenario leaves us but one option – to proceed with basic equitable principles. *See PLCM Group, Inc. v. Drexler*, 22 Cal.4th 1084, 1090 (Cal. 2000) ["equitable considerations must prevail over both the bargaining power of the parties and the technical rules of contractual construction."] citing *International Industries, Inc. v. Olen*, 21 Cal.3d 218 (Cal. 1978)

47.   If the consumer owes the finance company a negative sum, then the consumer has a credit in that amount and the consumer should be paid out that sum upon closing of his/her account. Any financial institution has a fiduciary duty to follow basic equitable principles and basic math. *Martin v. Hotel & Transp. Consultants, Inc.*, Civ. No. 17-00088 JMS-KSC, at *14 (D. Haw. June 1, 2018) describes fiduciary duties as "comprised of utmost good faith, integrity, honesty, and loyalty, as well as a duty of due care and diligence)." citing *Rose v. Showalter,* 108 Idaho 631 (Idaho Ct. App. 1985)

48.   Aside from the fact that BMW Financial Services failed to remit Plaintiff his equity of $18,493.10, BMW Financial Services failed to refund Plaintiff the monthly payments which he made after the Subject Vehicle was involved in a collision.

49.   Plaintiff continued to make monthly payments for the Subject Vehicle while State Farm was investigating Plaintiff's claim regarding the collision and the Total Loss.

50.   As a result, Plaintiff made nine (9) additional monthly payments with the purpose of maintaining a clean credit history. The total monthly payment, including the base monthly payment of $974.55 and sales/use tax of $92.58, amounted to $1,067.13. Therefore, the aggregate amount for the

nine (9) monthly payments for the Subject Vehicle equaled $9,604.17.

51.  To date, Plaintiff has not been refunded the $9,604.17 which he paid in an effort of preserving his credit history.

52.  As such, BMW Financial Services failed to refund Plaintiff's monthly payments in the amount of $9,604.17, which he made after the Subject Vehicle was involved in a collision and deemed Total Loss, and to remit Plaintiff the $18,493.10 equity amount which he built up throughout the Lease.

53.  Therefore, Plaintiff is entitled to the refund for the equity amount of $18,493.10 and for the monthly payments of $9,604.17, totaling $28,097.27.

54.  BMW Financial Services has wrongfully withheld the monthly payments made after the Subject vehicle was deemed Total Loss and Plaintiff's equity from Plaintiff assuming that since the difference between the Adjusted Lease Balance and the Realized Value is not a positive number, there are no more financial obligations between Plaintiff and Defendants. But this interpretation reeks of ignorance and lacks common sense. This is also unconscionable and outrageous.

55.  Defendants have multiple consumer complaints about this deceptive and fraudulent scheme. The encounter with Plaintiff did not stop and continues to happen to other consumers.

- "This company has given me the most crass and unethical treatment I've ever received.  I wish I was exaggerating… I put down $10,000 on a lease and 1.5 months later due to an accident I wasn't at fault for, the vehicle was totaled… regardless of the situation, at least there was a silver lining… I could recoup most of my down payment and purchase a new vehicle… instead, BMW financial informed me they would be keeping all benefits awarded to me by my insurance… that's right, instead of getting the additional $10,000 in value to payoff, they stole the 10k and left me with nothing…. On top of this, they came after me for an additional 3 payments AFTER THE VEHICLE WAS TOTALED. Great look BMW! Stealing from your consumer to take profit.  Don't make the same mistake I did… NEVER FINANCE WITH THIS TRASH COMPANY, and don't lease a BMW EVER!"                    (February                    2023, https://www.google.com/maps/contrib/100200288640648638536/place/ChIJUwAaZdLl wokRt6IXmxWKiCo/@41.0349328,-

74.0752131,16z/data=!4m6!1m5!8m4!1e1!2s100200288640648638536!3m1!1e1?hl=en -US)

- "Be very careful when doing business with this company, they literally screw their clients over and step all over them. We leased a 2022 BMW 3 series in February 2022. We gave a $6000 down payment as my daughter was a first time buyer and the dealer said it was required for her to get approved. 4 months later the vehicle was totaled in an accident. Allstate insurance was horrible and took 30 days to determine the car totaled. BMW financial terminated the lease however they still build us for two additional payments afterward for a total of 6 payments. The purchase price of the vehicle was about $45,000. We gave a $6000 down payment and made a total of 6 payments. At the time the vehicle was totaled we owed just over $38,000 if we were to purchase it, this was the plan. BMW demanded $50,000 from Allstate insurance and still charge me the deductible. If you do the math, BMW made over $62,000 on this $45,000 vehicle essentially spitting at their clients and profiting from their loss. It is beyond me how this is allowed however I will be filing report with the Attorney General's office and any other available avenues." (September 2022, https://www.yelp.ca/biz/bmw-financial-services-hilliard-2?sort_by=rating_asc)

- "Read this before leasing! I leased a 2021 BMW in April 2021 and the car was totaled, we were hit from behind. BMW Financial not only took an extra payment from us after the total loss (it was set on auto pay) and refused to pay it back, they also pocketed the excise tax and kept the equity in the car since cars are more valuable now than before. My payoff amount on the lease was roughly 5k less than the equity from the insurance payoff. Not only did they keep the equity, they didn't help me get into a new lease that was roughly $200 more expensive per month now for the same car. Contacting them is a complete nightmare, they only offer one number and they are short staffed so after hours of waiting and getting passed around between multiple employees there are still no answers. DO NOT LEASE through this company they will rip you off the first chance they get and they make it nearly impossible to get in contact. The only partial refund they gave me was my

initial down payment depreciated, even though the car appreciated in value. I expected so much better from a company of this size and prestige. This is a very sleazy way of doing business and I hope it catches up to them." (April 2022, https://www.google.com/maps/contrib/114889933190991383704/place/ChIJUwAaZdLl wokRt6IXmxWKiCo/@41.8487381,-72.491936,8z/data=!4m6!1m5!8m4!1e1!2s114889933190991383704!3m1!1e1?hl=en-US)

- "First Time BMW Owner...1 And Done" Company is a joke...My son had a near fatal accident and the 3 month old BMW was totaled. the payoff on my lease was right under $43000, My insurance company paid out over $57000, taking into consideration that car prices are at a premium and the average cost of the same model. The check was sent to BMW and they have told me that they are keeping the full amount...Not even returning my down payment. IS THIS NORMAL? BMW just padded their books with $15000+ in profits for 2021, hope it was worth losing a family of 5 car owners! I'm Very Upset with BMW, and more so I would be embarrassed if I was BMW. Goodbye BMW,  I'm going back to Mercedes!" (April 2022, https://www.google.com/maps/contrib/105613037378056871297/place/ChIJUwAaZdLl wokRt6IXmxWKiCo/@40.6038023,-74.4348489,9z/data=!4m4!1m3!8m2!1e1!2s105613037378056871297?hl=en-US)

- "I leased a 2021 530 from BMW finance with $4047 downpayment. The car was hit from behind and was totaled on 2/11/2022. the total payoff amount at the time was about $45000. My Geico insurance paid BMW $58000. They refused to refund me the difference. Because I set up autopay, they took my monthly payment twice since the car was totaled on 2/11/22.  one payment was posted on 2/21/2022 and last payment was on 3/21/2022. My insurance sent the payoff payment on 3/14 and they did not post it on my account until they took another monthly payment on 3/21/2022. They never refund my two month's overpayment. Now I lost all my downpayment plus additional two monthly payment after the car was totaled. I have to pay much high price for a new car. Will never

lease a car from them again!" (March 2022, https://www.google.com/maps/contrib/104080104074433180962/place/ChIJUwAaZdLl wokRt6IXmxWKiCo/@41.8412596,-73.2104389,8z/data=!4m6!1m5!8m4!1e1!2s104080104074433180962!3m1!1e7?hl=en-US)

- "I co-signed a loan with my son. He missed a payment during covid March 2020. I was not notified until july 2021 of the missed payment. I had to pay over ****** in late fees. A tree fell on my sons car and totaled it. The insurance company paid it off on 12/22/21 and *** continued taking out the monthly payment. USAA had to call *** and I still havent been reimbursed. I will never borrow money from them. Again. It was a nightmare! **************** is horrible!!!" (January 10, 2022, Kerri C., https://www.bbb.org/us/oh/hilliard/profile/auto-financing/bmw-financial-services-na-llc-0302-39000558/customer-reviews)

- "My contract with BMW FS showed I owed $28,069.50, however, BMW told my insurance I owed $40,740.44. Insurance sent them a check for $40,740.44. I originally leased to own the car 3 years ago for 39k ... BMW FS also is taking registration fees and taxes that they NEVER paid. Today I called asking for my 12k and they said there's a clause in my lease agreement called section 25.  I had an attorney review the agreement and Section 25 is regarding the terms on when the car is worthless and then the program's benefit for waiving up to $50,000 will be in effect. When calling BMW FS they told me they have "no comment" and to mail their legal team. Their legal team is unable to answer any questions. Totaled my car owned 28k on the car and my insurance company gave BMW a financial 41k. BMW is keeping the additional 12k. During this process, I called Pacific BMW and BMW Financial asking the steps to take and the process. I asked if it's best I pay out the 28k now I owe or have insurance send the 41k check to them. They told me to have insurance send BMW the check and they will send the extra amount back to me." (January 2022, https://www.yelp.ca/biz/bmw-financial-services-hilliard-2?start=10&sort_by=rating_asc)

PLAINTIFF'S COMPLAINT FOR DAMAGES

56.    As evidenced by the numerous complaints above, Defendants' scheme was maliciously designed to induce consumers to lease vehicles. Defendants do so by assuring consumers that the financial obligation under the lease contracts would be at the set sums not exceeding the down payment, monthly payments, and the lease end fee. Defendants give assurances of the flexibility to purchase the vehicles at any point in time for the remaining balance on the lease account and give the assurance that the consumers will keep any value above that balance as equity. However, when insurance proceeds arise out of accident, collision, theft, or other similar circumstances resulting in total loss, BMW Financial Services surprises consumers by withholding the equity owed to them and refusing to refund the monthly payments consumers made after the total loss. BMW Financial Services further claims that the equity –collected from the insurers along with the vehicles' remaining balance and payments satisfying all the terms of the lease – belongs to it and consumers have consented to such terms. Nevertheless, consumers are either unaware of such terms or were misrepresented about the implications of such terms.

57.    Had Plaintiff known about the above-described scheme, he would have never agreed to lease the Subject Vehicle relying on Defendants. Plaintiff would have negotiated other terms or would have purchased the Subject Vehicle instead of leasing it.

58.    Dealership knew that Plaintiff wanted to lease the Subject Vehicle to purchase it later for a lower price. It knew that Plaintiff wanted to acquire equity in the Subject Vehicle. Dealership's personnel were also aware that this equity would be captured by BMW Financial Services in the event of a total loss and the latter would refuse to refund the monthly payments made after 07/07/2020. Nevertheless, they represented to Plaintiff that he would build equity in the Subject Vehicle and that equity would belong to him to benefit from at any time, at his discretion.

59.    As a result of the misrepresentations made by Defendants and the scheme devised by BMW Financial Services, Plaintiff has now lost the sum of $28,097.27.

60.    Plaintiff has been and will continue to be financially damaged due to Defendants' failure to remedy the resulting damages from the unlawful conduct at the time of lease of the Subject Vehicle to Plaintiff.

///

///

-14-

## FIRST CAUSE OF ACTION

## FRAUD AND DECEIT

### *(Against All Defendants)*

61.     Plaintiff re-alleges and incorporates by reference as fully set forth herein all paragraphs of Plaintiff's Complaint for Damages.

62.     The particularity requirement for fraud requires the pleading of facts showing "how, when, where, to whom, and by what means the representations were tendered". *Stansfield v. Starkey*, 220 Cal.App.3d 59, 73 (Cal. Ct. App. 1990) citing *Hills Trans. Co. v. Southwest*, 266 Cal.App.2d 702 (Cal. Ct. App. 1968). Every element of fraud herein with specificity have been plead as follows:

     a.  *How*: On or about 01/30/2020, Plaintiff visited Dealership with the intent to acquire a vehicle for personal use. Plaintiff spoke with Dealership's Salesperson and Finance Manager, who were following the fraudulent scheme designed by Defendants to misrepresent the equity rights. Dealership's representatives verbally represented to Plaintiff that the financial obligation under the Lease would be at the set sums not to exceed the down payment, monthly payments, and the lease end fee. They assured that Plaintiff had a right to purchase the Subject Vehicle at any point in time for the remaining balance on the lease account while keeping any value above that balance as equity. These terms were laid out in the Lease. Moreover, after the Subject Vehicle was involved in a collision and deemed Total Loss, Plaintiff continued to make monthly payments, which BMW Financial Services refused to refund Plaintiff.

     b.  *When*: Prior to, at the time of leasing the Subject Vehicle on or about 01/30/2020, and on the days following the lease of the Subject Vehicle.

     c.  *Where*: The oral discussions about the financial terms of the Lease took place at Dealership's location— 9881 Research Drive, Irvine, CA 92618.

     d.  *To Whom*: The statements were made to Plaintiff by Defendants' representatives.

     e.  *What Means*: The discussions were made orally, by use of English language, simple words.

63.     "The requirement of specificity in a fraud action against a corporation requires [Plaintiff] to

allege the names of persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal.App.4th 153, 157 (Cal. Ct. App. 1991):

    a. *Names of Persons*: Plaintiff spoke with Dealership's Salesperson and Finance Manager, who were following the fraudulent scheme designed by Defendants.

    b. *Authority to Speak*: Defendants' representatives are responsible for speaking with and explaining the terms of the Lease to Plaintiff. Their authority to speak is self-evident in their job titles. Defendant's representatives were hired to effectuate the plot as designed by Defendants' executives, including, but not limited to, ex-President and ex-Chief Executive Officer Stefan Richman at BMW Financial Services, Chief Executive Officer David D. Smith, Chief Financial Officer Heath R. Byrd, General Manager Frank Avena at Dealership, to intentionally misrepresent the equity rights. The executives, by the very nature of their role within Defendants, had the authority to design and implement the fraudulent representations regarding the Lease, implement procedures to train dealership personnel, and did do so in fact. They also designed the scheme of withholding monthly payments Plaintiff made after the Subject Vehicle was deemed Total Loss.

    c. *To Whom They Spoke*: Defendants' representatives spoke with Plaintiff directly.

    d. *What They Said or Wrote*: Defendants told Plaintiff that he could terminate the Lease at any point in time paying all the outstanding fees pursuant to the Lease while keeping the equity accrued over time.

    e. *When It Was Said or Written*: At the time of leasing the Subject Vehicle on 01/30/2020, and when Plaintiff continued making monthly lease payments for the Subject Vehicle following the collision.

64.  Cal. Civ. Code § 1710 identifies four kinds of fraud: (1) intentional misrepresentation, (2) concealment, (3) false promise, and (4) negligent misrepresentation.

65.  Here, the fraud at hand is intentional misrepresentation, concealment, and false promise.

66.  **Intentional misrepresentation** occurs when there are the following elements present: "(1)

a misrepresentation of a material fact; (2) knowledge of falsity; (3) intent to induce reliance; (4) actual and justifiable reliance; and (5) resulting damage." *Chapman v. Skype Inc.*, 220 Cal.App.4th 217, 230 (Cal. Ct. App. 2013)

(1) On 01/30/2020, Defendants, by and through their agents, intentionally misrepresented material facts to Plaintiff, including, but not limited to, the following:

- That the lease payments would reduce the principal balance on the Subject Vehicle, thereby allowing Plaintiff to eventually buy the Subject Vehicle any time for the reduced price based on the number of lease payments made to date,

- Plaintiff would build equity in the Subject Vehicle and that equity would belong to him.

(2) Defendants made these representations knowing that they were false or made them recklessly and without regard for their truth. Defendants had knowledge of these material facts through sources not available to Plaintiff, including, but not limited to, early consumer complaints about the aforementioned equity rights, the aggregate data from the authorized dealers, and from other internal sources. Defendants had a duty to disclose the implications of the equity rights because:

- Defendants knew the representations made to Plaintiff were false [and/or made the representations recklessly and without regard for its truth] because they knew that in the event of a total loss BMW Financial Services would collect the full amount of the insurance proceeds including the equity built by Plaintiff and the monthly payments Plaintiff continued to make after the Subject Vehicle was involved in a collision. Defendants knew this by having their legal experts draft the terms of the Lease.

- Alternatively, in making such misrepresentations and committing such wrongful acts, Defendants acted with the conscious and reckless disregard to the truth or falsity of such misrepresentations and promises and wrongful acts. If Defendants had not foreseen the event of total loss, they should have modified the terms of the Lease after having received multiple consumer complaints regarding the

implications of these terms.

(3) Defendants intended for Plaintiff to rely on the statement, and subsequently intended to defraud Plaintiff, since they wanted Plaintiff to lease the Subject Vehicle despite the terms regarding equity rights. Moreover, Defendants refused to return the monthly payments Plaintiff made after the Subject Vehicle being involved in a collision.

(4) Plaintiff reasonably relied on Defendants' assurances that he would build equity in the Subject Vehicle. Such reliance upon misrepresentations, material omissions, and/or wrongful acts was justified and reasonable under the circumstances. Defendants are established businesses with positive reputations and reassuring infrastructures which put Plaintiff at ease. This gave Plaintiff no reason to mistrust Defendants. The harm to Plaintiff was not otherwise inevitable or due to unrelated causes because Plaintiff would simply not have leased the Subject Vehicle at all and/or would have purchased it.

(5) As a direct and proximate result of the acts and omissions of Defendants, Plaintiff has suffered damages for which relief is sought herein. Specifically, damages include the equity amount of $18,493.10 (Disposition Fee ($350) plus the Adjusted Lease Balance ($83,837.95) minus the Realized Value of the Subject Vehicle ($102,681.05)), the monthly payments totaling $9,604.17, any and all incidental and consequential damages as a result of the Lease, which would not have taken place but for the fraudulent misrepresentations both prior to and at the time of lease.

67. **Concealment** exists where a "(a) defendant suppressed a material fact; (b) the defendant was under a duty to disclose to plaintiff; (c) the fact was intentionally suppressed with intent to defraud; (d) plaintiff was unaware of the fact and would not have acted if the fact had been known; and (e) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." *Salameh v. 5th and K Master Assn., Inc.*, D066096, at *7 (Cal. Ct. App. Sep. 23, 2015)

(a) On 01/30/2020, Defendants, by and through their agents, concealed, or suppressed the material fact that in the event of a total loss, BMW Financial Services would collect all the insurance proceeds including the equity Plaintiff built in the Subject Vehicle and the monthly payments Plaintiff would make after the Subject Vehicle would be deemed Total Loss. BMW

Financial Services collected $28,097.27 belonging to Plaintiff, which also included monthly lease payments made by Plaintiff following the collision. Defendants assured the opposite to Plaintiff regarding the equity rights claiming that he would build equity over time and that equity would belong to him. Defendants made this representation knowing that it was false or made the representation recklessly and without regard for the truth. Defendants had knowledge of the material facts through sources not available to Plaintiff, including, but not limited to, early consumer complaints about the equity rights, the aggregate data from the authorized dealers, and from other internal sources.

(b) "The duty to disclose relevant information to a contractual party can arise as a result of the transaction itself within the parties' general obligation to deal in good faith." *Liebergesell v. Evans*, 93 Wn. 2d 881, 893 (Wash. 1980) Defendants are industry experts in sales and distribution of motor vehicles and related equipment and services and therefore had knowledge of material facts regarding the Lease terms. This material fact was not within reasonably diligent attention, observation, and judgment of Plaintiff because Plaintiff has no professional expertise, has no legal background, and has very limited consumer experience in vehicle acquisition. Defendants thus had a "general obligation" to disclose the equity rights and its implications to Plaintiff. Further, under California law, a duty to disclose arises when "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material fact." *Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088, 1904 (N.D. Cal. 2007) Here, (2) Defendants had exclusive knowledge of the material fact concerning the equity rights and monthly payments and (3) it actively concealed these facts from Plaintiff assuring that he would build equity in the Subject Vehicle. (4) It assured that Plaintiff acquired this equity but suppressed the fact that it would be taken away from Plaintiff in the event of a total loss. Moreover, BMW Financial Services wrongfully withheld Plaintiff's monthly payments made subsequent to the Subject Vehicle being involved in a collision.

PLAINTIFF'S COMPLAINT FOR DAMAGES

(c) Defendants intentionally concealed and suppressed these material facts to falsely assure Plaintiff that he would build equity rights in the Subject Vehicle as represented by Defendants and reasonably expected by consumers. Defendants omitted these material facts, with the intention to deceive, defraud, and induce Plaintiff into acting in reliance on the representations Defendants had made to Plaintiff and to induce Plaintiff to lease the Subject Vehicle. Defendants actively concealed or suppressed these material facts, in whole or in part, to protect/maximize their profits. They did so at the expense of Plaintiff.

(d) Plaintiff was unaware of these omitted material facts and would not have acted as he did if he had known of the concealed or suppressed facts. Plaintiff did not receive the benefit of the bargain as a result of Defendants' fraudulent concealment. These omitted and concealed facts were material because they would be relied on by a reasonable person leasing a new or used motor vehicle, and because they directly impact the value of the Subject Vehicle acquired by Plaintiff. Plaintiff trusted Defendants not to lease him a vehicle on the terms allowing Defendants to collect what belongs to Plaintiff. Plaintiff had no reason to believe Defendants were hiding information during Plaintiff's inquiry about these facts. Plaintiff asked about these facts. Defendants lied, made misrepresentations, and did not disclose what they knew about the terms of the Lease.

(e) As a direct and proximate result of the acts and omissions of Defendants, Plaintiff has suffered damages for which relief is sought herein. Specifically, damages include the equity amount of $18,493.10 (Disposition Fee ($350) plus the Adjusted Lease Balance ($83,837.95) minus the Realized Value of the Subject Vehicle ($102,681.05)), the monthly payments totaling $9,604.17, which would not have taken place but for the fraudulent misrepresentations at the time of the Lease and after Plaintiff's lease of the Subject Vehicle. Defendants committed concealment. Plaintiff is therefore entitled to recission and restitution in an amount according to proof at trial. Defendants' conduct was oppressive, fraudulent, and malicious, and constitutes despicable conduct in conscious disregard for Plaintiff's rights. Accordingly, Defendants are liable to Plaintiff for his damages in an amount to be proven at trial, including, but not limited to, Plaintiff's lost benefit of the bargain.

68.     A **false promise**, also known as "promissory fraud", occurs when a person makes a promise to do something "without any intention of performing it." *Union F. M. v. Southern Cal. F. M.*, 10 Cal.2d 671, 676 (Cal. 1938) "The elements of promissory fraud (i.e., of fraud or deceit based on a promise made without any intention of performing it) are: (1) a promise made regarding a material fact without any intention of performing it; (2) the existence of the intent not to perform at the time the promise was made; (3) intent to deceive or induce the promisee to enter into a transaction; (4) reasonable reliance by the promisee; (5) nonperformance by the party making the promise; and (6) resulting damage to the promise." *Behnke v. State Farm General Ins. Co.*, 196 Cal.App.4th 1443, 1453 (Cal. Ct. App. 2011):

(1) Through the terms found in the Lease ("A contract is a legally enforceable promise or set of promises." *Reichert v. Keefe Commissary Network, L.L.C.*, No. C17-5848RBL, at *3 (W.D. Wash. May 1, 2018)) and through oral representations, Defendants promised to Plaintiff that:

- the lease payments would reduce the principal balance on the Subject Vehicle, thereby allowing Plaintiff to eventually buy the Subject Vehicle any time for the reduced price based on the number of lease payments made to date,
- Plaintiff would build equity in the Subject Vehicle and that equity would belong to him.

(2) Defendants made the promises without any intention to perform such promises. Even if they were unaware of the implications of the Lease terms at the time of drafting them, the numerous complaints from consumers should have already notified them about such implications. The fact that Defendants neither tried to rectify the situation (did not try to remit the additional sum of money received from insurance proceeds) nor attempted to change the terms to after acknowledging their implications evinces the clear intent not to perform the promise made.

(3) The intent required for the fraud "is an intent to induce action". *Beckwith v. Dahl*, 205 Cal.App.4th 1039, 1063 (Cal. Ct. App. 2012) Here, Defendants, well aware of Plaintiff's desire to build equity and of the falsity of their statements regarding the equity rights, had financial interest to induce Plaintiff to enter the Lease.

(4) Not being an expert in law, having no legal assistance at the time of entering the Lease, and

counting on the experts in the automotive industry to deliver proper services, Plaintiff relied on the promises made by Defendants and entered the Lease.

(5) By withholding the extra money received from insurance proceeds and Plaintiff's monthly payments made after the Subject Vehicle was declared Total Loss, Defendants failed to fulfil their promises regarding the equity rights.

(6) As a result, Plaintiff, an individual of limited means, who wanted to lease the Subject Vehicle with the intent to purchase it later, suffered monetary damages in the amount of $28,097.27.

69.    Thus, Defendants committed fraud by giving false promises without any intent of performing them; by concealing, despite their duty to disclose, and misrepresenting the material facts regarding the equity rights, being fully aware that they would collect the equity in the event of a total loss and monthly payments made subsequent to the total loss, with the intent to induce Plaintiff to enter the Lease. Plaintiff, being no expert in the field, relied on Defendants' expertise and knowledge, counted on them acting in good faith, and suffered damages as a result of their conduct.

70.    But for this fraudulent inducement, Plaintiff would not have leased the Subject Vehicle at all from Defendants, he would have purchased the Subject Vehicle instead of leasing it or visited another selling dealership.

71.    Plaintiff's reliance upon such misrepresentations, material omissions, and wrongful acts was justified and reasonable under the circumstances. Defendants are established businesses with a positive reputation and a reassuring infrastructure which put Plaintiff at ease. This gave Plaintiff no reason to mistrust Defendants.

72.    After all, Plaintiff clearly asked about the terms of the Lease and was assured that he could purchase the Subject Vehicle at any point by paying off the remaining balance and the lease ending fee. He was also reassured that he would build equity in the Subject Vehicle that would belong to him.

73.    Plaintiff's reliance upon such misrepresentations, material omissions, and wrongful acts was justified and reasonable because the representation from Defendants was material. On the other hand, Plaintiff had no bargaining rights or powers at the time of entering the Lease as it pertained to the equity rights. This was a contract of adhesion.

74.    After all these assurances, it is no surprise that Plaintiff was confused when BMW Financial

Services collected the equity from insurance proceeds after the Subject Vehicle was declared Total Loss and refused to refund Plaintiff the monthly payments he made subsequent to the Subject Vehicle being involved in a collision.

75.    As a direct and proximate result of the acts and omissions of Defendants, Plaintiff suffered damages for which relief is sought herein.

76.    Plaintiff was not, however, the first individual to face these issues. Defendants have multiple complaints from former clients who experienced the same fraudulent and deceptive business practice.

77.    Therefore, Plaintiff is entitled to recover an award of punitive damages in order to deter and punish Defendants from repeating such conduct in the future.

## SECOND CAUSE OF ACTION

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### *(Against All Defendants)*

78.    Plaintiff re-alleges and incorporates by reference as fully set forth herein all paragraphs of Plaintiff's Complaint for Damages.

79.    In every contract or agreement there is an implied promise of "good faith and fair dealing". *American Student Financial Group, Inc. v. Dade Medical College, Inc.*, 180 F. Supp. 3d 671, 679 (S.D. Cal. 2015) This implied promise means that each party will not do anything to unfairly interfere with the right of any other party to receive the benefits of the contract. *Uranga v. Continental Casualty Co.*, 2d Civil B205995 (Cal. Ct. App. Mar. 24, 2009) Good faith means honesty of purpose without any intention to mislead or to take unfair advantage of another. It means being faithful to one's duty or obligation. However, the implied promise of good faith and fair dealing cannot create obligations that are inconsistent with the terms of the contract. *Attenborough v. Reicher*, No. B218931 (Cal. Ct. App. Oct. 6, 2010)

80.    "To show a breach of this covenant, a plaintiff must show the following elements: (1) the existence of a contract; (2) plaintiff performed all, substantially performed, or was excused from performing his obligations under the contract; (3) all conditions for defendant's performance occurred; (4) defendant unfairly interfered with plaintiff's right to receive the benefits of the contract; and (5) plaintiff was harmed by defendant's conduct" *Gonzalez v. First Franklin Loan Services*, 1:09-CV-00941 AWI-GSA (E.D. Cal. Jan. 11, 2010)

(1)   Here, Plaintiff and Defendants entered into a contract when Plaintiff agreed to lease the Subject Vehicle according to the terms found in and evidenced by the Lease.

(2)   Plaintiff did all, or substantially all of the significant things that the Lease required him to do, or he was excused from having to do those things. After the Subject Vehicle had been deemed Total Loss, Plaintiff filed a claim with the insurance company, which determined that the replacement cost for the Subject Vehicle to be equal to $102,681.05 including the equity amount of $18,493.10. This amount was transferred to Defendant. Thus, Plaintiff paid all the various costs associated with the lease of the Subject Vehicle, including the deductible amount. Moreover, Defendant withheld and refused to refund Plaintiff the monthly payments totaling $9,604.17 he made subsequent to the Subject Vehicle being involved in a collision.

(3)   All conditions required for Defendants' performance occurred. BMW Financial Services received the adjusted lease balance equal to $83,837.95 and the disposition fee of $350 alongside the equity amount and monthly payments subsequent to the Total Loss. BMW Financial Services could have transferred these amounts to Plaintiff after receiving them. Nevertheless, to the date of filing this lawsuit, Defendants have failed to return Plaintiff his equity and the monthly payments amounting to $28,097.27.

(4)   Thus, Defendants, did not act fairly and in good faith. It unfairly interfered with Plaintiff's right to receive the benefits of the contract. BMW Financial Services collected the equity amount and the monthly payments made subsequent to the Total Loss that belonged to Plaintiff and refuses to return him.

(5)   As a result of Defendants' conduct, Plaintiff lost his equity in the Subject Vehicle as well as monthly lease payments made subsequent to the Total Loss and as such suffered damages equal to $28,097.27.

81.   Consequently, Defendants breached the implied covenant of good faith and fair dealing inherent in the Lease by (1) failing to honor the financial terms of the Lease; (2) falsely representing that they would comply with the financial terms of the Lease; (3) attempting to collect a sum in excess of amounts owed under the Lease; (4) collecting sums in excess of amounts owed under the Lease and

failing to release such sums to Plaintiff; (5) collecting sums ($28,097.27) in excess of the Adjusted Lease Balances ($83,837.95) for terminating the Lease involving the total loss claim ($102,681.05) paid by Plaintiff's insurance company and monthly payments made subsequent to the Total Loss ($9,604.17) and refusing to remit such sums to Plaintiff.

82.    Defendants' conduct prevents Plaintiff from receiving the benefits under the contract. Because Defendants breached the implied covenant of good faith and fair dealing when misrepresenting the equity rights, Plaintiff has never received the benefit of the bargain. Plaintiff did not willingly agree to getting his equity taken away, but rather was induced to lease the Subject Vehicle on these terms as Defendants unfairly interfered with the right of Plaintiff to receive the benefits of the contract. Defendants did not act in good faith because they were not honest and actively intended to mislead Plaintiff and take unfair advantage of him.

83.    As a direct and proximate result of the breach of the implied covenant of good faith and fair dealing as alleged herein, Plaintiff suffered damages for which relief is sought herein.

### THIRD CAUSE OF ACTION

### VIOLATION OF BUSINESS & PROFESSIONS CODE § 17200, ET SEQ.

(*Against All Defendants*)

84.    Plaintiff re-alleges and incorporates by reference as fully set forth herein all paragraphs of Plaintiff's Complaint for Damages.

85.    Plaintiff has standing to bring this claim because Plaintiff lost money or property as a result of the misconduct alleged.

86.    A plaintiff has standing when he/she (1) loses or is deprived of money or property "sufficient to qualify as injury in fact, i.e., economic injury," and (2) the "economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 322 (Cal. 2011)

87.    Economic injury from unfair competition exists if a plaintiff "(1) surrender[s] in a transaction more, or acquires in a transaction less, than he or she otherwise would have; (2) ha[s] a present or future property interest diminished; (3) [is] deprived of money or property to which he or she has a cognizable claim; or (4) [is] required to enter into a transaction, costing money or property, that would otherwise

have been unnecessary." *Id.* at 323.

88. Here, (1) Plaintiff surrendered $28,097.27 more for the lease of the Subject Vehicle than he otherwise should have pursuant to the Lease. (3) As a result, he is deprived of the equity built in the Subject Vehicle which he has a right to own, as well as of the monthly payments made subsequent to the Total Loss.

89. Cal. Bus. & Prof. Code § 17200, *et seq.* prohibits any "unlawful, unfair, or fraudulent business act or practice."

90. Defendants' acts, omissions, misrepresentations, practices, and non-disclosures constitute unlawful, unfair, and fraudulent business acts and practices within the meaning of Cal. Bus. & Prof. Code § 17200, *et seq.*

91. A business act or practice is **unlawful** if among other things it violates civil or criminal statutes, as well as federal and state statutes and municipal regulations. *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1151 (9th Cir. 2008) Defendants have engaged in **unlawful** business acts and practices by (1) failing to honor the financial terms of the Lease; (2) falsely representing that they would comply with the financial terms of the Lease; (3) attempting to collect a sum in excess of amounts owed under the Lease; (4) collecting sums in excess of amounts owed under the Lease and failing to release such sums to Plaintiff; (5) collecting sums ($28,097.27) in excess of the Adjusted Lease Balances ($83,837.95) for terminating the Lease involving the total loss claim ($102,681.05) paid by Plaintiff's insurance company and monthly payments made subsequent to the Total Loss ($9,604.17) and refusing to remit such sums to Plaintiff.

92. These acts and practices were intended to and did violate Cal. Civ. Code § 1709*, et seq.*; Cal. Civ. Code § 1750, *et seq.* cited as the California Consumers Legal Remedies Act ("CLRA"); and Cal. Veh. Code § 11713.19.

- Cal. Civ. Code § 1709 states that "one who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers." Defendants willfully deceived Plaintiff in their representations regarding the financial terms of the Lease to induce Plaintiff to lease the Subject Vehicle.

- The CLRA protects consumers from false advertising, representations, and other unfair

business practices. Cal. Civ. Code § 1770(a)(14) states the following as an example of an "unfair method of competition and unfair or deceptive act[] or practice[]": "Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law." Defendants violated the CLRA by misrepresenting the equity rights to Plaintiff.

- Cal. Veh. Code § 11713.19(a)(1) states that it is "unlawful and a violation of this code" to "negotiate the terms of a vehicle sale or lease contract and then add charges to the contract for any goods or services without previously disclosing to the consumer the goods and services to be added and obtaining the consumer's consent." The extras have to be disclosed to the consumer and the consumer has to consent in writing to these extras. Defendants told Plaintiff that he should not pay anything more than the remaining balance and the lease ending fee but then overcharged him in the amount of his equity and the monthly payments made subsequent to the Total Loss. Furthermore, Plaintiff did not consent to these charges.

93.     "By statutory definition, any illegal business practice is also unfair." *Webster v. Omnitrition Intern., Inc.*, 79 F.3d 776, 788 (9th Cir. 1996) A business act or practice is **unfair** if it "offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060, 1096 (C.D. Cal. 2009) Defendants have engaged in **unfair** business acts or practices in that the justification for leasing vehicles based on the misrepresentations and omissions of material facts delineated above is outweighed by the gravity of the resulting harm, particularly considering the available alternatives, and offends public policy, is immoral, unscrupulous, unethical, and offensive, or causes substantial injury to consumers. The business scheme employed by Defendants, is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers because it induces consumers to lease vehicles with the assurance of equity right being built over time, but which ends up at BMW Financial Services' possession, as is clear by the outcome with Plaintiff.

94.     A business act is unfair if (1) there is a substantial consumer injury, (2) there are not any countervailing benefits to consumers or competition outweighing the injury, and (3) the injury could not

reasonably have been avoided by consumers. 15 U.S.C. § 45, *Daugherty v. American Honda Motor Co., Inc.*, 144 Cal.App.4th 824, 839 (Cal. Ct. App. 2006)

(1) "… [I]n order to satisfy the first prong of substantial consumer injury, the injury must be caused by the allegedly unfair practice." *Johnson v. Deutsche Bank Nat'l Trust Co.*, No. B223188, at *15 (Cal. Ct. App. Aug. 23, 2011) Further "substantial injury" requirement necessitates "that a person who brings an action under section 17200 must have sustained an injury in fact." *Camacho v. Automobile Club of Southern California*, 142 Cal.App.4th 1394, 1404 (Cal. Ct. App. 2006) Defendants failed to honor the financial terms of the Lease while falsely representing that they would comply with them. After the Subject Vehicle was deemed Total Loss and BMW Financial Services received the insurance proceeds, it collected a sum in excess of amounts owed under the Lease. Furthermore, it withheld and refused to refund Plaintiff the monthly payments he made subsequent to the Subject Vehicle being involved in a collision. To this date, Defendants have failed to release these sums to Plaintiff. As a result of Defendants' actions, Plaintiff lost his equity as well as monthly lease payments made for the Subject Vehicle following the collision and suffered damages in the amount of $28,097.27.

(2) Plaintiff's injury is not outweighed by any countervailing benefits to consumers or competition. "[W]hen a practice produces clear adverse consequences for consumers that are not accompanied by an increase in services or benefits to consumers or by benefits to competition, the unfairness of the practice is not outweighed." *Gardner v. Allstate Ins. Co.*, No. B188985 (Cal. Ct. App. July 24, 2007) (citation omitted). Collecting what belongs to consumers does in no way "increase" any "services or benefits" thus confirming the lack of any countervailing benefits.

(3) Plaintiff specifically inquired about the equity rights and other obligations under the Lease. Defendants knowingly lied to Plaintiff to induce the lease of the Subject Vehicle. "[Plaintiff] cannot have reasonably avoided the injury if [he] could not have reasonably anticipated the injury..." *Camacho v. Automobile Club of Southern California*, 142 Cal.App.4th 1394, 1405 (Cal. Ct. App. 2006) "Anticipatory avoidance through consumer

choice was impossible" as the Lease did not indicate that in the event of total loss BMW Financial Services would collect the equity and subsequent monthly payments, or for any other reason. *Orkin Exterminating Co., Inc. v. F.T.C*, 849 F.2d 1354, 1365 (11th Cir. 1988) Plaintiff had no other "means to avoid the injury" and could not have "mitigated the damage afterward" as no "potential avenues toward that end" were provided. *Id*. 1362. In fact, Plaintiff attempted to mitigate the damage caused by Defendants by sending a notice of violations and requesting compensation, but their efforts were unsuccessful. Plaintiff's injury, therefore, could not reasonably have been avoided by Plaintiff.

95.    A business act or practice is **<u>fraudulent</u>** if it is "likely to deceive the public". *Rubenstein v. Gap, Inc.*, 14 Cal.App.5th 870, 876 (Cal. Ct. App. 2017) (citation omitted). Defendants have engaged in **<u>fraudulent</u>** business acts or practices in that the representations and omissions of material fact described above have a tendency and likelihood to deceive lessees of these vehicles and the general public "by failure to disclose other relevant information", as is clear by the outcome with Plaintiff. *Leon v. Watsonville Hosp. Corp.*, No. H037288, at *29 (Cal. Ct. App. May 9, 2013)

- An advertisement or promotional practice is likely to deceive if it includes assertions that are (1) untrue, or (2) true "[but are] either actually misleading or which [have] a capacity, likelihood or tendency to deceive or confuse the public." (*Kasky v. Nike, Inc*. 27 Cal.4th 939, 951 (2002), citing *Leoni v. State Bar,* 39 Cal.3d 609, 626 (1985).)

- Defendants' practice of making false promises regarding equity rights, misrepresenting and failing to disclose properly the financial terms of the lease agreements is likely to deceive members of the public because the statements are untrue. It is inconceivable to think that consumers will be able to see through Defendants' false promises/misrepresentations and know that they are lying and that these terms are unconscionable. Besides, "unless we can say as a matter of law that contrary to the complaint's allegations, members of the public were not likely to be deceived or misled by respondents' packaging materials, we must hold that [Plaintiff] stated a cause of action." *Day v. AT & T Corp.*, 63 Cal.App.4th 325, 333 (Cal. Ct. App. 1998)

96.    In sum, Plaintiff sought the best deal to eventually own the Subject Vehicle and was told by

Defendants that he could lease it and gain equity over time. However, when the Total Loss occurred, BMW Financial Services not only collected the equity that belonged to Plaintiff, but also refused to refund Plaintiff the amount of the monthly payments Plaintiff made subsequent to the Total Loss.

97.     The concealment, intentional misrepresentations, and false promises made by Defendants to Plaintiff during the Lease negotiations constitute an unlawful, unfair, and fraudulent scheme designed to deceive him into believing that he would build equity in the Subject Vehicle.

98.     Defendants committed these unlawful, unfair, and fraudulent acts with conscious and reckless disregard for the truth or falsity of such misrepresentations, promises, concealment and wrongful acts and in violation of Cal. Civ. Code § 1709, *et seq.*; § 1750, *et seq*; Cal. Veh. Code § 11713.19; and Cal. Bus. & Prof. Code § 17200, *et seq.*

99.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered substantial consumer damage with no countervailing benefits outweighing it and which could not have been reasonably avoided.

100.    Plaintiff has suffered damages in the equity amount of $18,493.10 (Disposition Fee ($350) plus the Adjusted Lease Balance ($83,837.95) minus the Realized Value of the Subject Vehicle ($102,681.05)), the monthly payments in the amount of $9,604.17, and any and all incidental and consequential damages as a result of the Lease, which would not have taken place but for Defendants' concealment, false promises, and intentional misrepresentations.

101.    Thus, Plaintiff seeks relief for these damages.

102.    Furthermore, the acts of Defendants as herein described present a continuing threat to members of the general public in that Defendants continue to engage in these deceptive practices and will not cease doing so unless and until an injunction is issued by the Court.

103.    Defendants have failed to publicly acknowledge the wrongfulness of their actions and provide full equitable injunctive and monetary relief as required by statute.

104.    If Defendants are allowed to continue to engage in these deceptive practices other consumers will also lease vehicles by being tricked into believing they will build an equity which would belong to them regardless of circumstances. Instead, these consumers would enter lease contracts with unconscionable terms, which would allow Defendants to collect money belonging to consumers.

105.    In accordance with the provisions of Cal. Bus. & Prof. Code §§ 17200 and 17203, Plaintiff seeks an order of this Court requiring Defendants to immediately cease such acts of unfair competition and enjoining Defendants from continuing to conduct business via the unlawful, unfair, deceptive, and/or fraudulent business acts and practices set forth in this Complaint and from failing to disclose the true nature of their misrepresentations and ordering Defendants to engage in a corrective notice and advertising campaign.

106.    Plaintiff further seeks attorney's fees under Cal. Civ. Proc. Code § 1021.5.

### FOURTH CAUSE OF ACTION

### VIOLATION OF BUSINESS & PROFESSIONS CODE § 17500, ET SEQ.

*(Against All Defendants)*

107.    Plaintiff re-alleges and incorporates by reference as fully set forth herein all paragraphs of Plaintiff's Complaint for Damages.

108.    Plaintiff has standing to bring this claim because Plaintiff lost money or property as a result of the misconduct alleged.

109.    Cal. Bus. & Prof. Code § 17500*, et seq.* prohibits unfair, deceptive, untrue, and misleading advertising in connection with the disposal of personal property (among other things), including, but not limited to, false statements as to worth, value, and former price.

110.    The business scheme employed by Defendants is unfair, deceptive, untrue, and misleading because the communications and statements regarding the financial terms of the Lease and the equity gain are not only false but are also made with the intent to effectively bait and switch consumers, including Plaintiff, into leasing vehicles. *See Wood v. Honey Baked Ham, Inc.*, No. B261248 at *8 (Cal. Ct. App. Nov. 8, 2016) ["A 'bait and switch' is a form of false advertising in which advertisements may not be bona fide because what the merchant intends to sell is significantly different from that which drew the potential customer in."]

111.    Defendants, by and through Salesperson and Financial Manager, deceived Plaintiff by stating that the financial obligation under the Lease would be at the set sums not to exceed the down payment, monthly payments, and the lease end fee. They further deceived Plaintiff that he had a right to purchase the Subject Vehicle at any point in time for the remaining balance on the lease account while keeping any

value above that balance as equity.

112.   In reliance on these statements, Plaintiff leased the Subject Vehicle with the intent to ending up owning it. Thereafter, when the Subject Vehicle was declared Total Loss, Plaintiff discovered that BMW Financial Services collected the equity amount he was told would belong to him. Furthermore, BMW Financial Services withheld and refused to refund Plaintiff the monthly payments he made subsequent to the Subject Vehicle being involved in a collision.

113.   This was all part of a methodical extortion scheme designed and implemented by Defendants against Plaintiff and other similarly situated consumers. Defendants intentionally made the previously alleged misrepresentations and promises, devised, and executed a scheme to defraud Plaintiff, and did so resulting in damage to Plaintiff with the conscious and reckless disregard to the truth or falsity of such.

114.   In making such misrepresentations and wrongful acts, Defendants committed acts of untrue and misleading advertising as defined in Cal. Bus. & Prof. Code § 17500.

115.   Defendants knew, or should have known, that Plaintiff would rely on Defendants' assurances as they are experts in the industry and because Plaintiff constantly told Defendants he wanted to end up owning the Subject Vehicle. "As indicated, if the defendant 'has reason to expect' that his material misstatements or nondisclosures would be passed on to and relied upon by the plaintiff, he is liable to them." *Geernaert v. Mitchell*, 31 Cal.App.4th 601, 609 (Cal. Ct. App. 1995)

116.   Plaintiff did in fact rely on Defendants' deceptive, untrue, and misleading communications and statements and suffered damages as a direct result. "[T]he rule of equity is that where there has been a fraudulent misrepresentation or a willful concealment of facts by means of which a person has been induced to enter into a contract to subscribe, in the absence of circumstances tending to excite suspicion in the mind of a reasonable man he may rightfully rely upon the statements to which the other party to the contract or the agent of such other party has deliberately pledged his faith." *Tidewater Southern Railway Company v. Harney*, 32 Cal. App. 253, 260 (Cal. Ct. App. 1916) (citation omitted)

117.   Plaintiff leased the Subject Vehicle under the belief that he would build equity and eventually own it, but Defendants' deceptive communication resulted in him surrendering more in the transaction than he would have. Defendants assured Plaintiff that the financial obligation under the Lease would be at set sums, but when the Subject Vehicle was involved in a collision and deemed Total Loss, BMW

Financial Services claimed, that pursuant to the Lease, it had to collect the insurance proceeds fully, including the portion exceeding Plaintiff's obligation under the Lease amounting to $18,493.10. Furthermore, BMW Financial Services refused to refund Plaintiff the monthly payments he made subsequent to the Total Loss amounting to $9,604.17.

118.    The Lease, however, did not seem to include terms regulating the responsibilities of the Parties being involved in the circumstances surrounding this action. The Lease required Plaintiff to pay the disposition fee, the Adjusted Lease Balance, and the amount by which the latter exceeds the Realized Value of the Subject Vehicle. Nothing was said regarding the event of the Realized Value of the Subject Vehicle exceeding the Adjusted Lease Balance in the event of it being deemed a total loss. Neither did the Lease allow BMW Financial Services to withhold the monthly payments Plaintiff made subsequent to the Total Loss. Plaintiff never consented to giving out these amounts to Defendants. *McElroy v. Tenet Health Care Corp.*, No. G047300, at *12 (Cal. Ct. App. Aug. 21, 2013) [consent to pay more "cannot be inferred from an agreement that is silent on the subject."]

119.    Nevertheless, Defendants, who initially promised Plaintiff that he would gain equity in the Subject Vehicle, claimed otherwise after the Subject Vehicle was deemed Total Loss. At the time of signing the Lease, Plaintiff had no choice but to rely on the misrepresentations and assurances made by Defendants and was thus tricked into believing that he would gain equity by leasing the Subject Vehicle.

120.   As a direct result of the aforementioned acts, Defendants have received, and continue to unjustly hold, collect, or accept revenues derived directly or indirectly from Plaintiff, through untrue and misleading representations and advertising.

121.    Defendants' unfair, deceptive, untrue, misleading communications and advertising of the financial terms of the Lease described above present a continuing threat to members of the general public in that Defendants persist and continue to engage in these practices with respect to the general public and will not cease doing so unless and until an injunction is issued by this Court.

122.    If Defendants are allowed to continue to engage in these deceptive practices other consumers will also be tricked into believing they would gain equity when leasing vehicles. Instead, these consumers will be deprived of their equity rights, because of the unconscionable terms of the lease agreements prepared by Defendants.

123. Thus, in accordance with the provisions of Cal. Bus. & Prof. Code §§ 17500 and 17535, Plaintiff requests the Court to issue an order enjoining the acts of untrue and misleading advertising and representations described herein and directing Defendants to make full restitution to Plaintiff, who has suffered from such acts.

124. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages for which relief is sought herein.

125. Plaintiff has suffered damages in the equity amount of $18,493.10 (Disposition Fee ($350) plus the Adjusted Lease Balance ($83,837.95) minus the Realized Value of the Subject Vehicle ($102,681.05)), the monthly payments in the amount of $9,604.17, and any and all incidental and consequential damages as a result of the Lease, which would not have taken place but for Defendants' fraudulent misrepresentations.

126. Plaintiff also seeks to recover his attorney's fees under Cal. Civ. Proc. Code § 1021.5.

**FIFTH CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT**

(*Against All Defendants*)

127. Plaintiff re-alleges and incorporates by reference as fully set forth herein all paragraphs of Plaintiff's Complaint for Damages.

128. This cause of action is brought pursuant to the CLRA.

129. The Subject Vehicle is a "good" under the CLRA that was bought primarily for personal, family, or household purposes as defined in the CLRA in Cal. Civ. Code § 1761(a).

130. Plaintiff is a "consumer" as defined in the CLRA in § 1761(d).

131. The Lease is a "transaction" as defined in the CLRA in § 1761(e).

132. Defendants violated California law, including the CLRA, by: (1) failing to honor the financial terms of the Lease; (2) falsely representing that they would comply with the financial terms of the Lease; (3) attempting to collect a sum in excess of amounts owed under the Lease; (4) collecting sums in excess of amounts owed under the Lease and failing to release such sums to Plaintiff; (5) collecting sums ($28,097.27) in excess of the Adjusted Lease Balances ($83,837.95) for terminating the Lease involving the total loss claim ($102,681.05) paid by Plaintiff's insurance company and monthly payments made

subsequent to the Total Loss ($9,604.17) and refusing to remit such sums to Plaintiff. The above acts and violations are believed to be a pattern and practice by Defendants to engage in these activities.

133.   Defendants' actions, representations, and conduct have violated, and continue to violate, the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the lease of goods or services to consumers.

134.   The following "unfair methods of competition and unfair or deceptive acts or practice undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer are unlawful: (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have. (9) Advertising goods or services with intent not to sell them as advertised. (14) Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law. (17) Representing that the consumer will receive a rebate, discount, or other economic benefit, if the earning of the benefit is contingent on an event to occur subsequent to the consummation of the transaction. (19) Inserting an unconscionable provision in the contract." Cal. Civ. Code § 1770(a).

(5)   Defendants misrepresented the financial terms of the Lease by claiming that it would provide a benefit of equity to Plaintiff that the Lease did not actually provide.

(9)   Defendants advertised that the financial obligations for terminating the Lease were limited to the Adjusted Lease Balance and the disposition fee but did not intend to follow through with this statement and ended up taking more than the necessary amount.

(14)   Defendants assured Plaintiff that the Lease conferred the right of equity in the event of Plaintiff deciding to purchase the Subject Vehicle by paying the Adjusted Lease Balance and the disposition fee. However, Defendants later tried to deny this and imposed additional financial obligations on Plaintiff to pay the full sum of insurance proceeds, including the equity that belonged to Plaintiff after the Subject Vehicle was deemed Total Loss. Furthermore, Defendant refused to refund Plaintiff to monthly payments he made subsequent to the Total Loss. These additional

obligations were neither discussed with nor approved by Plaintiff during the negotiation or execution of the Lease.

(17) Defendants misrepresented the alleged economic benefit of equity by failing to disclose that Plaintiff's equity built throughout the Lease would be taken away from Plaintiff if the Subject Vehicle is deemed Total Loss and BMW Financial Services would refuse to refund Plaintiff the monthly payments he made after the Subject Vehicle being involved in a collision.

(19) Although Defendants insist that Plaintiff had to pay the insurance proceeds fully, including the equity, pursuant to the Lease, Plaintiff do not agree with this interpretation of the Lease. Assuming arguendo, Defendants' interpretation is correct, then the Court shall not enforce the Lease and deem it in full or its clauses regarding the termination of the Lease unconscionable. *See* Cal. Civ. Code § 1670.5; U.C.C. § 2A-108 (AM. L. INST. & UNIF. L. COMM'N 1977). Unconscionability refers to "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." (*A & M Produce Co. v. FMC Corp.*, 135 Cal.App.3d 473, 485 (Cal. Ct. App. 1982).) Unconscionability involves procedural and substantial elements. The Lease is an "adhesive contract" which was drafted by BMW Financial Services, "a party with superior bargaining strength", and presented to Plaintiff, "the weaker party on a take it or leave it basis" *Alexander v. Professional Exchange Service Corp.*, No. F059647 (Cal. Ct. App. Apr. 20, 2011). This proves the procedural element of unconscionability. *Elite Logistics Corp. v. Wan Hai Lines, Ltd.,* No. B252543, at *13 (Cal. Ct. App. June 4, 2015) "Substantively unconscionable terms may take various forms but may generally be described as unfairly one-sided." *Little v. Auto Stiegler, Inc.*, 29 Cal.4th 1064, 1071 (Cal. 2003) The Lease had to contain at least 'a modicum of bilaterality' to avoid unconscionability. *Abramson v. Juniper Networks, Inc.*, 115 Cal.App.4th 638, 658 (Cal. Ct. App. 2004) (citation omitted). Here, to terminate the Lease Plaintiff may purchase the Subject Vehicle by paying the Adjusted Lease

Balance, the disposition fee, and the difference between Adjusted Lease Balance and Realized Value of the Subject Vehicle if the former is negative. However, according to Defendants, they do not need to return to Plaintiff the difference even when it is positive, as well as they do not need to refund any monthly payments made subsequently. Defendants do not give any "reasonable justification for that lack of symmetry". *Id*. This "unilateral obligation" proves that the Lease or its clause regarding termination "lacks the requisite degree of mutuality" and hence is unconscionable. *Nyulassy v. Lockheed Martin Corp.*, 120 Cal.App.4th 1267, 1286 (Cal. Ct. App. 2004)

135.    Defendants thus violated the CLRA by misrepresenting the financial terms of the Lease, by making false promises regarding the equity rights to Plaintiff and concealing/failing to disclose that they would collect the equity in the event of a total loss and would nor refund the monthly payments Plaintiff made after the Subject Vehicle being involved in a collision, with the intent to induce Plaintiff to enter the Lease fraught with unconscionability.

136.    Defendants have an illegal pattern and practice of: (1) failing to honor the financial terms of the Lease; (2) falsely representing that they would comply with the financial terms of the Lease; (3) attempting to collect a sum in excess of amounts owed under the Lease; (4) collecting sums in excess of amounts owed under the Lease and failing to release such sums to Plaintiff; and (5) collecting sums ($28,097.27) in excess of the Adjusted Lease Balances ($83,837.95) for terminating the Lease involving the total loss claim ($102,681.05) paid by Plaintiff's insurance company and monthly payments made subsequent to the Total Loss ($9,604.17) and refusing to remit such sums to Plaintiff.

137.    If Defendants are not restrained from engaging in these types of practices in the future, Plaintiff and other members of the general public will continue to suffer harm.

138.    As a direct and proximate result of the violation of the CLRA as alleged herein, Plaintiff brings this cause of action for violation of the aforementioned provisions and seeks injunctive relief under the CLRA.

139.    Pursuant to Cal. Civ. Code § 1782(d), in an action for injunctive relief brought under the specific provisions of § 1770, Plaintiff is not obligated to comply with the § 1780 (a) requirement of 30-

day notice to Defendants.

140.    On behalf of the general public, Plaintiff requests that an injunction against Defendants be issued to enjoin them from continuing to engage in the unlawful conduct alleged herein, namely collecting the full insurance proceeds that exceed consumers' liabilities, and in fact belong to them as their equity.

141.    For purposes of this cause of action alone, Plaintiff is only seeking injunctive relief and not seeking the other prayers listed in the below Player for Relief, as Plaintiff is yet to give Defendants a 30-day notice of the CLRA violations.

142.    Plaintiff is also entitled to recover attorney's fees and costs under the CLRA in connection with this litigation. *See* Cal. Civ. Code § 1780(e).

# PRAYER FOR RELIEF

Wherefore, Plaintiff prays for a judgment as follows:

   a.   For recovery of the greater of actual damages according to proof, if adequate, as appropriate;

   b.   For recovery of all incidental damages, as appropriate;

   c.   For recovery of all consequential damages, as appropriate;

   d.   For recovery of punitive damages, as appropriate;

   e.   For restitution, as appropriate;

   f.   For injunctive relief, as appropriate;

   g.   For recovery of interest at the legal rate, as appropriate;

   h.   For all reasonable attorney's fees and the aggregate amount of costs reasonably incurred pursuant to California's Private Attorney General Statute, Cal. Civ. Proc. Code § 1021.5, as appropriate; or

   i.   For reasonable attorney's fees and costs under Cal. Civ. Code § 1780(e);

   j.   For recovery of $281,593.53 (actual damages in the amount of $28,097.27 plus nine (9) times the actual damages plus filing fees in the amount of $620.83) in damages; and

   k.   Such other and further relief that the Court deems just and appropriate.

///

1

**PLAINTIFF HEREBY REQUESTS A JURY TRIAL AS TO ALL QUESTIONS SO TRIABLE.**

2

DATED: 01/29/2024                    THE MARGARIAN LAW FIRM

3
                                     462 West Colorado Street
                                     Glendale, California 91204

4
                                     By */s/ Hovanes Margarian*

5
                                     Hovanes Margarian
                                     Attorney for Plaintiff

6
                                     TIGRAN PETROSYAN

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S COMPLAINT FOR DAMAGES

## DECLARATION OF HOVANES MARGARIAN PURSUANT TO CAL. CIV. CODE § 1780(d)

I, HOVANES MARGARIAN, declare as follows:

1.      I am an attorney at law duly licensed to practice before all courts of the State of California and am the principal attorney at the Margarian Law Firm, one of the counsels of record for Plaintiff. I have personal knowledge of the matters set forth below and if called upon as a witness could and would competently testify thereto.

2.      I am informed and believe that venue is proper in this court pursuant to Cal. Civ. Code § 1780(d) based on the following facts:

      a.  Defendants have performed transactions at issue in this action, or has obtained financial benefit from such transactions, at all times relevant to this action, in Orange County, California; and

      b.  At all relevant times herein, Plaintiff resides in Los Angeles County, California.

WHEREFORE, I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this Declaration was executed on 01/29/2024, at Glendale, California.

THE MARGARIAN LAW FIRM
462 West Colorado Street
Glendale, California 91204

By */s/ Hovanes Margarian*
Hovanes Margarian
Attorney for Plaintiff
TIGRAN PETROSYAN

PLAINTIFF'S COMPLAINT FOR DAMAGES

**EXHIBIT A**

PLAINTIFF'S COMPLAINT FOR DAMAGES

| Month | Adj Cap Cost | Rate | Monthly Rate | | Total | Balance | Mo'ly Pmt | Total Base Pmts | Initial Adj CapCost | Adj Lease Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | $88,144.09 | 3.5693219 | 0.002974435 | $262.18 | $262.18 | $88,406.27 | $974.55 | $974.55 | $88,144.09 | $87,431.72 |
| 2 | $87,431.72 | 3.5693219 | 0.002974435 | $260.06 | $522.24 | $87,691.78 | $974.55 | $1,949.10 | $88,144.09 | $86,717.23 |
| 3 | $86,717.23 | 3.5693219 | 0.002974435 | $257.93 | $780.17 | $86,975.16 | $974.55 | $2,923.65 | $88,144.09 | $86,000.61 |
| 4 | $86,000.61 | 3.5693219 | 0.002974435 | $255.80 | $1,035.98 | $86,256.42 | $974.55 | $3,898.20 | $88,144.09 | $85,281.87 |
| 5 | $85,281.87 | 3.5693219 | 0.002974435 | $253.67 | $1,289.64 | $85,535.53 | $974.55 | $4,872.75 | $88,144.09 | $84,560.98 |
| **6** | **$84,560.98** | **3.5693219** | **0.002974435** | **$251.52** | **$1,541.16** | **$84,812.50** | **$974.55** | **$5,847.30** | **$88,144.09** | **$83,837.95** |
| 7 | $83,837.95 | 3.5693219 | 0.002974435 | $249.37 | $1,790.53 | $84,087.32 | $974.55 | $6,821.85 | $88,144.09 | $83,112.77 |
| 8 | $83,112.77 | 3.5693219 | 0.002974435 | $247.21 | $2,037.75 | $83,359.99 | $974.55 | $7,796.40 | $88,144.09 | $82,385.44 |
| 9 | $82,385.44 | 3.5693219 | 0.002974435 | $245.05 | $2,282.80 | $82,630.49 | $974.55 | $8,770.95 | $88,144.09 | $81,655.94 |
| 10 | $81,655.94 | 3.5693219 | 0.002974435 | $242.88 | $2,525.68 | $81,898.82 | $974.55 | $9,745.50 | $88,144.09 | $80,924.27 |
| 11 | $80,924.27 | 3.5693219 | 0.002974435 | $240.70 | $2,766.38 | $81,164.97 | $974.55 | $10,720.05 | $88,144.09 | $80,190.42 |
| 12 | $80,190.42 | 3.5693219 | 0.002974435 | $238.52 | $3,004.90 | $80,428.94 | $974.55 | $11,694.60 | $88,144.09 | $79,454.39 |
| 13 | $79,454.39 | 3.5693219 | 0.002974435 | $236.33 | $3,241.23 | $79,690.72 | $974.55 | $12,669.15 | $88,144.09 | $78,716.17 |
| 14 | $78,716.17 | 3.5693219 | 0.002974435 | $234.14 | $3,475.37 | $78,950.31 | $974.55 | $13,643.70 | $88,144.09 | $77,975.76 |
| 15 | $77,975.76 | 3.5693219 | 0.002974435 | $231.93 | $3,707.30 | $78,207.69 | $974.55 | $14,618.25 | $88,144.09 | $77,233.14 |
| 16 | $77,233.14 | 3.5693219 | 0.002974435 | $229.72 | $3,937.03 | $77,462.87 | $974.55 | $15,592.80 | $88,144.09 | $76,488.32 |
| 17 | $76,488.32 | 3.5693219 | 0.002974435 | $227.51 | $4,164.54 | $76,715.83 | $974.55 | $16,567.35 | $88,144.09 | $75,741.28 |
| 18 | $75,741.28 | 3.5693219 | 0.002974435 | $225.29 | $4,389.83 | $75,966.57 | $974.55 | $17,541.90 | $88,144.09 | $74,992.02 |
| 19 | $74,992.02 | 3.5693219 | 0.002974435 | $223.06 | $4,612.89 | $75,215.08 | $974.55 | $18,516.45 | $88,144.09 | $74,240.53 |
| 20 | $74,240.53 | 3.5693219 | 0.002974435 | $220.82 | $4,833.71 | $74,461.35 | $974.55 | $19,491.00 | $88,144.09 | $73,486.80 |
| 21 | $73,486.80 | 3.5693219 | 0.002974435 | $218.58 | $5,052.29 | $73,705.38 | $974.55 | $20,465.55 | $88,144.09 | $72,730.83 |
| 22 | $72,730.83 | 3.5693219 | 0.002974435 | $216.33 | $5,268.62 | $72,947.16 | $974.55 | $21,440.10 | $88,144.09 | $71,972.61 |
| 23 | $71,972.61 | 3.5693219 | 0.002974435 | $214.08 | $5,482.70 | $72,186.69 | $974.55 | $22,414.65 | $88,144.09 | $71,212.14 |
| 24 | $71,212.14 | 3.5693219 | 0.002974435 | $211.82 | $5,694.52 | $71,423.96 | $974.55 | $23,389.20 | $88,144.09 | $70,449.41 |
| 25 | $70,449.41 | 3.5693219 | 0.002974435 | $209.55 | $5,904.07 | $70,658.96 | $974.55 | $24,363.75 | $88,144.09 | $69,684.41 |
| 26 | $69,684.41 | 3.5693219 | 0.002974435 | $207.27 | $6,111.34 | $69,891.68 | $974.55 | $25,338.30 | $88,144.09 | $68,917.13 |
| 27 | $68,917.13 | 3.5693219 | 0.002974435 | $204.99 | $6,316.33 | $69,122.12 | $974.55 | $26,312.85 | $88,144.09 | $68,147.57 |
| 28 | $68,147.57 | 3.5693219 | 0.002974435 | $202.70 | $6,519.03 | $68,350.27 | $974.55 | $27,287.40 | $88,144.09 | $67,375.72 |
| 29 | $67,375.72 | 3.5693219 | 0.002974435 | $200.40 | $6,719.43 | $67,576.12 | $974.55 | $28,261.95 | $88,144.09 | $66,601.57 |
| 30 | $66,601.57 | 3.5693219 | 0.002974435 | $198.10 | $6,917.53 | $66,799.67 | $974.55 | $29,236.50 | $88,144.09 | $65,825.12 |
| 31 | $65,825.12 | 3.5693219 | 0.002974435 | $195.79 | $7,113.33 | $66,020.92 | $974.55 | $30,211.05 | $88,144.09 | $65,046.37 |
| 32 | $65,046.37 | 3.5693219 | 0.002974435 | $193.48 | $7,306.80 | $65,239.84 | $974.55 | $31,185.60 | $88,144.09 | $64,265.29 |
| 33 | $64,265.29 | 3.5693219 | 0.002974435 | $191.15 | $7,497.96 | $64,456.45 | $974.55 | $32,160.15 | $88,144.09 | $63,481.90 |
| 34 | $63,481.90 | 3.5693219 | 0.002974435 | $188.82 | $7,686.78 | $63,670.72 | $974.55 | $33,134.70 | $88,144.09 | $62,696.17 |
| 35 | $62,696.17 | 3.5693219 | 0.002974435 | $186.49 | $7,873.26 | $62,882.65 | $974.55 | $34,109.25 | $88,144.09 | $61,908.10 |
| 36 | $61,908.10 | 3.5693219 | 0.002974435 | $184.14 | $7,870.92 | $62,092.25 | | | | |